Paper No. 11
BAC

THIS DISPOSITION IS CITABLE
AS PRECEDENT OF THE TTAB    JAN. 7, 00

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re International Taste, Inc.
_____

Serial No. 75/314,626
_____

Dax Alvarez of Blakely, Sokoloff, Taylor & Zafman for
International Taste, Inc.

Teresa A. Lee, Trademark Examining Attorney, Law Office 111
(Craig Taylor, Managing Attorney).
_____

Before Seeherman, Hairston and Chapman, Administrative
Trademark Judges.

Opinion by Chapman, Administrative Trademark Judge:


International Taste, Inc. has filed an application to

register the mark shown below

for "french fries" in International Class 29 and "fast food restaurants" in International Class 42.[1]

Registration has been finally refused under Section 6 of the Trademark Act on the basis of applicant's failure to comply with a requirement to disclaim the word "HOLLYWOOD." Such word, according to the Examining Attorney, is primarily geographically descriptive of applicant's goods and services within the meaning of Section 2(e)(2) of the Trademark Act, and therefore must be disclaimed.

Applicant has appealed. Both applicant and the Examining Attorney have filed briefs, but an oral hearing was not requested. We reverse.

It is the Examining Attorney's position that the primary significance of the term "Hollywood" is that of a geographic place, specifically, a town in California, as evidenced by the following definition in The American Heritage Dictionary (1992)[2]: "1. A district of Los Angeles, California. Consolidated with Los Angeles in 1910, it has long been a film and entertainment center. 2. A city of

---

[1] Application Serial No. 75/314,626, filed June 25, 1997, wherein applicant alleges a bona fide intent to use the mark in commerce. Applicant disclaimed the term "fries."
[2] This definition was submitted with the Examining Attorney's brief on appeal, along with her request that the Board take judicial notice of said dictionary definition. The Examining Attorney's request for judicial notice is granted. See TBMP §712.

Southeast Florida on the Atlantic Ocean north of Miami Beach. It is a resort and retirement community with varied light industries. Population 121,697." The Examining Attorney also submitted (i) copies of several third-party registrations where the term "Hollywood" has been disclaimed or registered under Section 2(f) on the Principal Register, or registered on the Supplemental Register; (ii) copies of several excerpts from the Nexis database showing that Culver City, California (applicant's business location) is located in close proximity to Hollywood, California; and (iii) a copy of a telephone book map of the Los Angeles area including Hollywood and Culver City. The Examining Attorney contends that because Culver City and Hollywood are close to one another, a public association of the goods and services with the place named is presumed.

Applicant argues that the Examining Attorney has established neither that the term "Hollywood" is primarily geographical nor that there is a goods and services/place association. Applicant submitted Webster's II New College Dictionary's (1995) definition of "Hollywood" as "The U.S. motion-picture industry or the atmosphere attributed to it" to show that the term "Hollywood" is not primarily geographical because it has a distinct separate commercial

and historical meaning referring to the entertainment industry in general. In further support of this contention, applicant refers to one of the Nexis stories submitted by the Examining Attorney, which reads, in part, as follows:

> Hollywood, the industry, has never been completely contained by the geographic bounds of Hollywood, the place. Burbank, Culver City, West Los Angeles and Beverly Hills have all been, and continue to be, thriving centers of the Hollywood entertainment world. Increasingly, Hollywood business is also being done surfside, in Santa Monica. Los Angeles Times, August 27, 1995.

The test for primarily geographically descriptive marks is (1) whether the term sought to be registered primarily denotes a geographical place to reasonable purchasers, and (2) if so, whether customers would associate the goods and/or services with the geographic place named. See In re Jacques Bernier Inc., 894 F.2d 389, 13 USPQ2d 1725 (Fed. Cir. 1990); In re Societe General des Eaux Minerals de Vittel S.A., 824 F.2d 957, 3 USPQ2d 1450 (Fed. Cir. 1987); and In re Gale Hayman Inc., 15 USPQ2d 1478 (TTAB 1990).

"A mark that has a popular significance apart from its geographical meaning is not, in most cases, 'primarily' geographical." 2 J. Thomas McCarthy, McCarthy on

Trademarks and Unfair Competition, §14:28 (4th Ed. 1999). And in the case of World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482, 168 USPQ 609 (5th Cir. 1971), the Court stated the following with reference to the Trademark Act: "The word 'primarily' should not be overlooked, for it is not the intent of the federal statute to refuse registration of a mark where the geographic meaning is minor, obscure, remote or unconnected with the goods."

It seems to us that this case can be disposed of by a determination of the first question, specifically whether the term sought to be registered primarily denotes a geographical place. There is no question that "Hollywood" is a section of Los Angeles, California (as well as being a town in Florida). However, in view of the other prominent, significant meaning of the term "Hollywood" as referring to the entertainment industry in general, we find that the Examining Attorney has not established that the *primary* significance of the term "Hollywood" is that of a geographic location in California. That is, the record does not establish that to the purchasing public the primary connotation of the term "Hollywood" is the particular California town and not the general entertainment industry. Moreover, the star design feature

5

which forms part of applicant's mark increases the commercial impression of the term as connoting the entertainment industry and decreases the connection to the town of Hollywood, California. See In re Municipal Capital Markets Corp., 51 USPQ2d 1369 (TTAB 1999) (the mark COOPERSTOWN for restaurant services held not primarily geographically deceptively misdescriptive--the majority opinion stating that the primary significance of the term COOPERSTOWN is not geographic); In re Sharkey's Drygoods Co., 23 USPQ2d 1061 (TTAB 1992) (the mark PARIS BEACH CLUB for T-shirts and sweatshirts held not geographically deceptive, because the term PARIS when juxtaposed with BEACH CLUB is "a facetious rather than a geographic reference"); and In re Dixie Insurance Company, 223 USPQ 514 (TTAB 1984) (the mark DIXIE for property and casualty underwriting services held not primarily geographically descriptive, because the primary significance of the term DIXIE is not geographical). Cf. In re California Pizza Kitchen Inc., 10 USPQ2d 1704 (TTAB 1988) (the primary significance of the term "California" in the mark CALIFORNIA PIZZA KITCHEN for restaurant services held geographical – the terms PIZZA KITCHEN were disclaimed); In re Opryland USA Inc., 1 USPQ2d 1409 (TTAB 1986) (the primary significance of the term "Nashville" in the mark

THE NASHVILLE NETWORK for television program production services and distribution of television programming to cable television systems held geographical); and In re The Cookie Kitchen, Inc., 228 USPQ 873 (TTAB 1986) (the primary significance of the term MANHATTAN for cookies held geographical).

There are several registered marks in which the word "Hollywood" is disclaimed (or the marks are registered under Section 2(f) or on the Supplemental Register); on the other hand, applicant has pointed out two registrations with no disclaimer of the term "Hollywood." We acknowledge that the Office has apparently treated the word "Hollywood" inconsistently; however, while the Office strives for consistency, the Board must decide each case on its own facts and record. See In re Consolidated Foods Corp., 200 USPQ 477 (TTAB 1978). With respect to the third-party registrations which include disclaimers of the term "Hollywood," we do not have before us any information from the registration files as to why an Examining Attorney required and/or why the applicant/registrant offered such disclaimers.

To the extent that there is any doubt as to the primary significance of the term "HOLLYWOOD," we resolve

doubt in favor of the applicant. See In re John Harvey & Sons Ltd., 32 USPQ2d 1451, 1455 (TTAB 1994).

In view of our finding that the term "Hollywood" is not primarily a geographical term, we need not reach the question of whether the Examining Attorney has established a goods and services/place association between the term and the applied-for goods and services.

Decision: The requirement under Section 6 for a disclaimer of the term "Hollywood" is reversed, and the application will be forwarded for publication in the Official Gazette.

E. J. Seeherman

P. T. Hairston

B. A. Chapman
Administrative Trademark Judges,
Trademark Trial and Appeal Board